**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

|  |  |  |
|---|---|---|
| **DONNA M. MURCHISON,** | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **CIVIL NO. 3:08CV818** |
| **MICHAEL J. ASTRUE,** Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1] Plaintiff, Donna Murchison, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for Supplemental Security Income ("SSI"). The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (Docket no. 9) be DENIED; that Defendant's motion for summary

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

judgment (Docket no. 10) be GRANTED; and that the final decision of the Commissioner be AFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed her current application for SSI on December 17, 2004,[2] claiming disability due to right foot injury and pain, as well as depression, with an alleged onset date of April 2, 1989. (R. at 225, 236.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[3] (R. at 204-06, 213-15.) Plaintiff requested a hearing and on December 12, 2006, accompanied by counsel, she testified before an ALJ. (R. at 29-55.) On December 27, 2006, the ALJ denied Plaintiff's application, finding that she was not disabled under the Act because, based on her age, education, work experience, and residual functional capacity, there are jobs she could perform which exist in significant numbers in the national economy. (R. at 17-26.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 9-11.)

---

[2] Plaintiff previously filed an application for SSI on May 6, 2002, alleging disability since April 2, 1989. (R. at 76B-76C.) Plaintiff's prior application was denied initially and on reconsideration. (R. at 59-60, 66-68.) In a decision dated April 5, 2004, another ALJ, William B. Lissner, found that Plaintiff was capable of standing and walking for two hours in an eight-hour work day, sitting at least six hours in an eight-hour work day, lifting up to ten pounds frequently, and performing unskilled jobs entailing simple, routine tasks such that she was not disabled and entitled to benefits. (R. at 198-99.) Plaintiff did not appeal the decision. (R. at 242.)

[3] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services ("DDS"), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has

made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[4] 20 C.F.R. §§ 416.920(b), 404.1520(b). If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition. Id. If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c). In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal

---

[4] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." 20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b). Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities. 20 C.F.R. § 404.1572(c).

effect on one's ability to function. 20 C.F.R. § 404.1520(c). At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is required to determine whether the claimant can return to her past relevant work[5] based on an assessment of the claimant's residual functional capacity ("RFC")[6] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform her past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a Vocational Expert ("VE"). When a VE is called

---

[5] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[6] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV. ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of her disability. (R. at 20.) At steps two and three, the ALJ found that Plaintiff had the severe impairments of right foot dystrophy as a result of a right metatarsal fracture and surgery, and hypertension, but that these impairments did not meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award of benefits at that stage. (R. at 20-22.) The ALJ next determined that Plaintiff had the RFC to perform sedentary work, noting that "the claimant's admitted activities of daily living" supported the conclusion that her impairments did not preclude the performance of all substantial gainful activity. (R. at 22-24.) Nonexertionally, the ALJ found that, based on the Plaintiff's past work and education level, "such pain as [Plaintiff] experiences would not preclude the performance of unskilled work." (R. at 24.)

The ALJ then determined at step four of the analysis that Plaintiff could not perform her past relevant work as an office cleaner and retail customer service person because of the levels of exertion required in each position. (R. at 24.) At step five, after considering Plaintiff's age,

education, work experience, and RFC, the ALJ nevertheless found that there are other occupations which exist in significant numbers in the national economy that Plaintiff could perform. (R. at 25-26.) Accordingly, the ALJ concluded that Plaintiff was not disabled and was employable such that she was not entitled to benefits. (R. at 26.)

Plaintiff moves for a finding that she is entitled to benefits as a matter of law, or in the alternative, she seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of her position, Plaintiff argues that: (1) the ALJ's conclusion that Plaintiff had the mental RFC to perform the unskilled work identified by the VE is not supported by substantial evidence in the record; and (2) the ALJ's conclusion that Plaintiff had the physical RFC to perform the sedentary work identified by the VE is also unsupported by substantial evidence. (Pl.'s Mem. in Supp. of Mot. for Summ. J. "Pl.'s Mem." at 2-7.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence with the application of the correct legal standard and should therefore be affirmed. (Def.'s Mot. for Summ. J. "Def.'s Mem." at 19-29.)

**A. Plaintiff contends that the ALJ's conclusion that Plaintiff had the mental RFC to perform unskilled work identified by the VE is not supported by substantial evidence.**

Plaintiff asserts that the ALJ's finding that Plaintiff's depression, anxiety, and low I.Q. were non-severe is not supported by the substantial weight of the evidence, as required to sustain the denial of benefits. (Pl.'s Mem. at 5.) Specifically, Plaintiff asserts that psychological examinations of Plaintiff that are a matter of evidence in the record concluded that her combination of mental impairments would make performing even simple and repetitive tasks difficult, which supports a finding that Plaintiff suffered from a severe mental impairment and that she was, therefore, disabled. (Pl.'s Mem. at 3.)

When evaluating a claimant's alleged mental impairment, an ALJ will first evaluate the claimant's "pertinent symptoms, signs, and laboratory findings" to determine if the claimant has a medically determinable mental impairment. 20 C.F.R. § 404.1520(a)(b)(1). If the ALJ determines that a medically determinable mental impairment exists, then the ALJ must rate the degree of functional limitations that results from the impairment. See 20 C.F.R. § 404.1520(a)(b)(2). The SSA has identified four broad functional areas in which an ALJ will rate the degree of a claimant's functional limitations: (1) activities of daily living[7]; (2) social functioning[8]; (3) concentration, persistence and pace[9]; and (4) episodes of decompensation.[10] 20 C.F.R. § 404.1520(a)(c)(3). In rating the first three functional areas, an ALJ will utilize a five point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 404.1520(a)(c)(4). When

---

[7] Activities of daily living include activities such as "cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C1. The ALJ will assess the quality of these activities by their "independence, appropriateness, effectiveness, and sustainability." Id. Additionally, the ALJ will determine the extent to which the claimant is able to initiate and participate in these activities independently. Id.

[8] Social functioning refers to a claimant's capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C2. It can include a claimant's ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers. Id.

[9] Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C3.

[10] Episodes of decompensation are exacerbation or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C4. Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two). Id. Episodes of decompensation may be inferred from medical records showing significant alteration in medication or documentation of the need for a more structured psychological support system. Id.

evaluating the fourth functional area, the ALJ utilizes a four point scale: none, one or two, three, four or more. Id. After rating each degree of functional impairment, the ALJ must determine the severity of the claimant's mental impairment by analyzing the ratings given to the various functional areas. See 20 C.F.R. § 404.1520(a)(d). If the ALJ rates the degree of limitation in the first three functional areas as "mild" or "none," and gives a rating of "none" in the fourth area, then the ALJ will generally conclude that the claimant's impairments are non-severe, unless the evidence indicates that there is more than a minimal limitation on the claimant's ability to perform basic work activities. See 20 C.F.R. § 404.1520(a)(d)(1). If the ALJ determines that a claimant's impairment is severe, he will then determine if the impairment meets or equals the severity of one of the listed mental disorders found in 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. See 20 C.F.R. § 404.1520(a)(d)(2). If the severe impairment does not meet or equal in severity any listing, then the ALJ will assess the claimant's RFC in light of the mental impairment and in conjunction with the evidence of all other severe impairments. See 20 C.F.R. §§ 404.1520(a)(d)(3), 404.1523.

Here, the ALJ concluded that there was an absence of evidence of any episodes of decompensation, or more than mild limitations in daily activities, social functioning, and maintaining concentration, persistence, or pace. (R. at 22.) In support of his conclusion, the ALJ explained that there was no evidence in the medical record indicating Plaintiff had received mental health treatment or medication during the relevant period. (R. at 20.) Furthermore, the only evidence of mental limitation Plaintiff noted in support of her disability claim was insomnia

and a prescription for Amitriptyline[11]; and she had not been under the care of a psychiatrist or psychologist. (R. at 20.) The ALJ further noted that assessments by examining physicians (Drs. Cowan and Royal) stating that Plaintiff suffers from bipolar disorder and depression precluding all work were unsupported by treatment notes or evidence of psychiatric treatment. (R. at 21, 176-83.) Indeed, one assessment was even internally inconsistent, and none included supporting clinical records or treatment notes such that the ALJ concluded the opinions were entitled to only minimal weight. (R. at 178-81.) For those reasons, in addition to the fact that Plaintiff "is able to handle the household chores, prepare meals, shop, take public transportation, care for her personal needs without assistance, and read to her daughters and granddaughters," the ALJ concluded that Plaintiff did not suffer from a severe mental impairment. (R. at 21.)

A review of the record demonstrates that the ALJ's assessment that Plaintiff's psychological impairments were non-severe is supported by the substantial weight of the evidence. Plaintiff received a single evaluation from a licensed clinical social worker in February 2005 that resulted in a diagnosis or depression and anxiety disorder, but there are no additional reports showing that any treatment ensued. (R. at 20, 132-33.) In May 2005, Dr. Belyea, a licensed clinical psychologist, concluded that Plaintiff exhibited symptoms of major depression, anxiety disorder, a communication disorder and a low I.Q., but the findings were unsupported by objective test results. (R. at 20-21, 143-47.) In July 2006, Plaintiff complained

---

[11] Amitriptyline hydrochloride is an antidepressant with sedative effects, used for treatment of depression, chronic pain, enuresis, peptic ulcer, and bulimia nervosa. Saunders, Dorland's Illustrated Medical Dictionary 64 (31st ed. 2007).

of depression to Dr. Cowan, her family doctor, who prescribed Seroquel.[12] (R. at 21, 41-49.) However, pharmacy records from a drug store where Plaintiff testified she filled all of her prescriptions indicate that Plaintiff had never obtained a prescription for Seroquel, or any other prescription prescribed to address psychiatric symptoms. (R. at 47-49, 292-94.)

Given the inconsistencies in Plaintiff's mental health evaluations and treatment, the lack of any records of ongoing psychiatric counseling or treatment, and Plaintiff's admitted ability to engage in activities of daily living, the ALJ did not err in finding Plaintiff's alleged psychological impairments to be non-severe. As the ALJ explained, none of Plaintiff's psychological evaluations indicated that Plaintiff's daily living activities were affected by her mental impairments. Indeed, Plaintiff herself stated that she could take care of her personal needs, such as feeding and dressing herself, and that she could perform housework, prepare meals, shop, and utilize public transportation. (R. at 252-59, 268-75.) Therefore, the ALJ's decision to classify Plaintiff's degree of limitation in the functional areas of daily activities, social functioning, and maintaining concentration, persistence, and pace as no more than "mild" was supported by substantial evidence and the application of the correct legal standard.

**B. Plaintiff contends that the ALJ's conclusion that Plaintiff had the physical RFC to perform sedentary work identified by the VE is not supported by substantial evidence.**

Plaintiff also argues that the ALJ's assessment regarding Plaintiff's physical RFC is not supported by substantial evidence or record. (Pl.'s Mem. at 6-7.) Specifically, Plaintiff asserts that the ALJ erred by relying on the opinions of non-examining physicians and his own observations at the hearing. (Pl.'s Mem. at 6-7.)

---

[12] Seroquel is a form of quetiapine fumarate, used as an antipsychotic for treatment of schizophrenia and other psychotic disorders. Id. At 1590.

At step three of the sequential analysis, but before deciding whether a claimant can perform past relevant work, an ALJ must determine the claimant's RFC. 20 C.F.R. §§ 404.1520(e)-(f), 404.1545(a)(5)(i). In analyzing a claimant's physical abilities, an ALJ will first assess the nature and extent of the claimant's physical limitations, and then determine the claimant's RFC for work activity on a regular and continuing basis. See 20 C.F.R. § 404.1545(b). Generally, it is the responsibility of the claimant to provide the evidence that the ALJ utilizes in making his RFC determination; however, before a determination is made that a claimant is not disabled, the ALJ is responsible for developing the claimant's complete medical history, including scheduling consultative examinations if necessary. See 20 C.F.R. § 404.1545(a)(3). The ALJ's RFC determination must incorporate impairments supported by the objective medical evidence in the record and those based on the claimant's credible complaints. See 20 C.F.R. § 404.1545(a)(3).

Here, the ALJ determined that Plaintiff had the RFC to perform sedentary work. (R. at 22.) Specifically, the ALJ found that Plaintiff could sit for up to six hours in an eight-hour work day, stand and walk for up to two hours in an eight-hour work day, and lift weights of up to ten pounds frequently. (R. at 22.) Nonexertionally, the ALJ concluded that Plaintiff could perform unskilled work based on the level of pain she experienced and her level of education. (R. at 24.)

In reaching his conclusions, the ALJ conducted a thorough review of the medical records during the time period relevant to Plaintiff's disability claim. (R. at 22-24.) The ALJ first considered Plaintiff's hearing testimony, in which she stated that she has not had any surgery to her foot since 1986 and utilizes non-prescription analgesics and pain relievers (Naproxen) for her pain. (R. at 22, 35-36, 42 .) Furthermore, despite her right foot impairment, Plaintiff was able to

remain employed until 2001, and she admitted that she has not required any further surgery after the initial procedure. (R. at 23, 35-36.) The ALJ noted that medical care for Plaintiff's impairments has taken place exclusively in the form of monthly visits to a clinic and the use of prescribed medication, rather than with hospitalization or emergency room treatment. (R. at 23.) The ALJ also considered Plaintiff's testimony that she experienced radiating pain from her foot to her thigh, and has used a cane for the past six years to help maintain her balance. The ALJ noted, however, that Plaintiff provided inconsistent statements about how long she had used a cane in that she told a doctor (Dr. Titus) in March 2005 that she had used it for a year and a half, but she testified at the hearing before the ALJ that she had used it for six years. (R. at 23, 35-38, 139-42.) The ALJ also observed that Plaintiff was able to walk with the use of the cane at the hearing, had no difficulty sitting or rising from her chair, and answered all questions directly and at a normal pace with no sign of distress. (R. at 23.) The ALJ gave great weight to the decision of ALJ Lissner, who analyzed Plaintiff's previous claim for SSI benefits in April 2004 when he concluded that Plaintiff had the RFC to perform sedentary work. (R. at 22-23, 189-99.)

      A review of the record demonstrates that the ALJ's physical RFC analysis was thorough and that it was supported by the substantial weight of the evidence of record. In 2005, Dr. Royal concluded that Plaintiff was unable to work for a limited period of time based on diagnoses of severe osteoarthritis and peripheral neuropathy, but his assessment was not accompanied by any supporting treatment notes. (R. at 23, 135-36.) An examination by Dr. Titus in March 2005 resulted in his conclusion that the Plaintiff had minimal degenerative changes in her right foot, a limping gait, and right leg muscle atrophy that would limit her ability to perform tasks entailing standing and lifting. (R. at 23, 139-42.) However, his objective findings and x-ray results

reflected only light lower extremity abnormalities, with no restrictions on upper extremity function. (R. at 24, 139-42.) Treatment notes from September 2005 to July 2006 at a clinic (the Vernon J. Harris East End Clinic) include prescription medications for pain, but do not contain any objective medical findings other than Plaintiff's height, weight, blood pressure, and other basic physical findings. (R. at 23, 172-75, 184-88.) Furthermore, an examination conducted by Dr. Cowan in 2006 contains no treatment notes or objective medical findings at all, other than the statement of "no work" that is written over each section of the evaluation form. (R. at 24, 176-83.) At the same time, non-examining state agency consultants concluded that Plaintiff had the RFC for sedentary work requiring occasional postural maneuvers. (R. at 138-71.) Based on the objective medial findings, x-ray results, and Plaintiff's admitted activities of daily living, the ALJ properly concluded that Plaintiff was capable of performing the exertional demands of sedentary work, and that, nonexertionally, "such pain as [Plaintiff] experiences would not preclude the performance of unskilled work." (R. at 24.)

Finally, in questioning the VE, the ALJ attempted to determine whether Plaintiff would be able to obtain unskilled sedentary work, given her sever impairments. (R. at 50-51.) The ALJ, consistent with the Dictionary of Occupational Titles, asked the VE to characterize Plaintiff's past work, to which the VE responded that an office cleaner would perform unskilled light work, and that a retail customer service person would perform semi-skilled light work. (R. at 50.) The ALJ then questioned the VE, based on the Plaintiff's RFC determination, whether jobs exist in significant numbers in the national economy for a person limited to unskilled sedentary work and the VE responded that jobs such as a hand assembler, a sorter or grader, or a hand packer or packager, all entail unskilled sedentary work and are available. (R. at 51.) The

VE also qualified his opinion by noting that individualized supervision is generally not available for unskilled jobs and that Plaintiff would be required to complete a normal eight-hour work day without interruption. (R. at 52.)

The ALJ's inquiry of the VE took into account the different facets of Plaintiff's RFC to determine whether Plaintiff would be able to perform unskilled sedentary work consistent with her physical and mental limitations. As the ALJ's RFC determination was based on the substantial weight of the evidence, and the related inquiry regarding step five of the analysis appropriately addressed Plaintiff's impairments, the ALJ's findings were supported by substantial evidence in the record, and the application of the correct legal standard.

## V. CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (Docket no. 9) be DENIED; that Defendant's motion for summary judgment (Docket no. 10) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable James R. Spencer and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within ten (10) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District**

**Judge except upon grounds of plain error.**

                                                                        /s/
                                                  DENNIS W. DOHNAL
                                                  UNITED STATES MAGISTRATE JUDGE

Date:  October 7, 2009
Richmond, Virginia